UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
CYNTHIA M. FULLWOOD,                                  :
                                                      :
                                    Plaintiff,        :   13 Civ. 7174 (KPF)
                                                      :
                        v.                            :   OPINION AND ORDER
                                                      :
WOLFGANG'S STEAKHOUSE, INC., *et al.*,                :
                                                      :
                                    Defendants.       :
                                                      :
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: November 14, 2014

KATHERINE POLK FAILLA, District Judge:

Plaintiff Cynthia M. Fullwood sues Defendants Wolfgang's Steakhouse, Inc. ("Wolfgang's") and ZMF Restaurants LLC. Plaintiff alleges that Defendants willfully violated the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), Pub. L. 108-159, 117 Stat. 1952, by printing credit card receipts that included the expiration date of customers' cards. Defendants move to dismiss the case in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff has not plausibly alleged a willful violation of FACTA, and alternatively to strike from Plaintiff's Amended Complaint all class allegations concerning FACTA violations outside the five-year period prior to the filing of the instant litigation. For the reasons set forth in remainder of this Opinion, Defendants' motion to dismiss is denied without prejudice to refile in light of Plaintiff's proposed amendment to her complaint, and Defendants' motion to strike is granted.

## BACKGROUND[1]

### A.   Factual Background

Plaintiff dined at the Park Avenue location of Wolfgang's on October 3, 2013. (Am. Compl. ¶ 14). After paying for her meal with a credit card, she received an electronically printed receipt displaying the last four digits of her credit card number and the expiration date of the card. (*Id.*). Plaintiff does not allege that any actual damages flowed from this act, but sues for the statutory damages available for a willful violation of FACTA, on behalf of herself and a class of similarly situated plaintiffs.

Prior to this incident, Congress had passed FACTA, which required in part that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1). Congress subsequently passed the Credit and Debit Card Receipt Clarification Act of 2007 (the "Clarification Act"), Pub. L. 110-241, 122 Stat. 1565, which clarified that merchants should print neither the expiration date nor more than four digits of customers' credit card numbers on their receipts. (Am. Compl. ¶¶ 26-27). The Clarification Act excused prior noncompliance with the expiration date requirement, but imposed liability from June 3, 2008, onward. (*Id.* at ¶ 28).

---

[1]   As is necessary on a motion to dismiss, the facts as set forth in the Amended Complaint ("Am. Compl.") are accepted here as true. For convenience, Defendants' opening brief is referred to as "Def. Br."; Plaintiff's opposition brief as "Pl. Opp."; and Defendants' reply brief as "Def. Reply."

FACTA's requirements were widely publicized among merchants, and other businesses changed their practices to comply with the statute. (Am. Compl. ¶¶ 30, 32). Credit card companies, including Visa and MasterCard, incorporated these requirements into their guidelines distributed to vendors and binding upon them. (*Id.* at ¶ 33). Visa's 2011 Card Acceptance Guidelines for Visa Merchants, for example, states on page 13 of 76 that "[t]he expiration date should not appear at all on the cardholder copy of the transaction receipt," though without reference to FACTA. (*Id.* Ex. A at 13).[2] Similarly, MasterCard's 2013 Security Rules and Procedures states on page 3-8 (or approximately the twenty-ninth of its 136 pages) that all "Cardholder and Merchant receipts … must omit the Card expiration date," again without specifically referencing FACTA. (*Id.* Ex. B at 3-8).[3]

Plaintiff adds in her Proposed Second Amended Class Action Complaint ("Proposed Complaint" or "Prop. Compl.") (Pl. Opp. Ex. H) more specific allegations, including additional reports and publications that were widely published or circulated to merchants regarding FACTA's requirements (Prop. Compl. ¶¶ 31-36); allegations of monthly notifications from Wolfgang's

---

[2] Plaintiff alleges, and Defendants do not deny, that similar language appeared in earlier versions of these guidelines made binding upon Defendants. For example, the August 12, 2006 Rules for Visa Merchants included on page 62 similar language and a picture illustrating what needed to be removed. (Am. Compl. ¶ 33).

[3] Plaintiff also notes a 2011 incident in which customers of Wolfgang's and other steakhouses in the New York City metropolitan area were targeted for identity theft. (Am. Compl. ¶ 35). As the referenced article in the New York Times makes clear, the theft was accomplished by employees using sophisticated electronic credit card "skimmers." (Def. Br. Ex. B). While Defendants may indeed have been put on particular notice as to the risk of one form of identity theft, this Court is unable to infer from this any additional knowledge of FACTA or its requirements regarding printed receipts.

3

merchant bank informing it that expiration dates were not to be printed (*id.* at ¶ 62); and additional periodic notifications from other sources including credit card issuers, Point of Sale providers, and trade associations (*id.* at ¶¶ 61, 63, 64). Plaintiff also mentions a letter received by Plaintiff's counsel from Defendants' insurance provider on October 29, 2013 — nineteen days after the filing of the Initial Complaint, and five days before the filing of the Amended Complaint — denying coverage due to Defendants' ostensible violation of FACTA. (*Id.* at ¶ 67).

**B.    The Instant Litigation**

Plaintiff filed suit on October 10, 2013, and filed her Amended Complaint on November 4, 2013. Per the Court's order, Defendants filed their motion to dismiss and in the alternative to strike on January 10, 2014; Plaintiff filed her response on February 6, 2014; and Defendants filed their reply on February 28, 2014. On July 17, 2014, the Court stayed the case on consent of both parties during the pendency of the plaintiff's motion for reconsideration in a highly factually similar case, *Crupar-Weinmann* v. *Paris Baguette America, Inc.*, in which the court had granted the defendant's motion to dismiss for failure to state a claim. *Crupar-Weinmann* v. *Paris Baguette Am., Inc.*, No. 13 Civ. 7013 (JSR), 2014 WL 2990110 (S.D.N.Y. June 30, 2014). After the Honorable Jed S. Rakoff, United States District Judge, denied the motion for reconsideration, *see Crupar-Weinmann* v. *Paris Baguette Am., Inc.*, No. 13 Civ. 7013 (JSR), 2014 WL 4337978 (S.D.N.Y. Sept. 2, 2014), this Court lifted the stay in the instant litigation on October 1, 2014.

## DISCUSSION

### A.     Plaintiff Is Granted Leave to Replead

#### 1.     Applicable Law

Plaintiff has already amended once as a matter of right pursuant to Federal Rule of Civil Procedure 15(a)(1).  Beyond this, pursuant to Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires," though "it is within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy* v. *Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  Because the Court has not previously issued a scheduling order, leave to amend is not to be held to the higher "good cause" standard set forth in Federal Rule of Civil Procedure 16(b).

This Court has serious questions about why Plaintiff did not include in either her Initial Complaint or her Amended Complaint the more specific allegations regarding the extent to which Defendant was informed of FACTA's requirements.  Yet the Supreme Court has made clear that

> [i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be "freely given."

*Foman* v. *Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)).  Lack of diligence is notably absent from this list.  And the Second Circuit has

5

suggested that prompt repleading upon receipt of a motion to dismiss may be particularly deserving of a district court's leave to amend. *See Williams* v. *Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011).

Of course, "it is proper to deny leave to replead where there is no merit in the proposed amendments or amendment would be futile." *Hunt* v. *Alliance N. Am. Gov't Income Trust, Inc.*, 159 F.3d 723, 728 (2d Cir. 1998). Yet this Court is not certain that repleading would be futile, for the reasons set forth below.

### 2. Repleading May Not Be Futile

To ascertain whether repleading would be futile, the Court must examine the Proposed Complaint in light of FACTA's requirements and their application at the motion to dismiss stage. The Court finds that a willful violation of FACTA requires not only that the defendant know of or be reckless as to the statute's requirements, but also that the defendant know of or be reckless as to whether it is in violation of the statute. When confronting a motion to dismiss, however, plaintiffs are not required to bring forth evidence of such mens rea, but rather may allege that defendants were informed with sufficient depth or frequency of the specific requirements of the statute as applied to them, such that knowledge of or recklessness as to defendant's own violation could be plausibly inferred. The allegations set forth in the Proposed Complaint come very close to that level. However, in the interests of fairness, the Court determines that such a conclusion cannot be appropriately drawn absent briefing from the parties on the Proposed Complaint rather than the Amended Complaint.

### a. A Willful Violation of FACTA Requires the Defendants' Knowledge of or Recklessness as to Whether the Defendants Were in Violation of FACTA's Requirements

In interpreting what constitutes a willful violation of FACTA, the Supreme Court has provided only a partial answer, which is applicable when the statutory language is unclear. Accordingly, since the Second Circuit has not weighed in on the question, one must look to both the law of other Circuits and their interpretation of analogous statutory schemes. Ultimately, a willful violation does not require merely that a defendant know of FACTA's requirements and violate them, but also that the defendant have knowledge of or recklessness as to the fact that its behavior violates the statute.

FACTA was passed in 2003 to amend the Fair Credit Reporting Act of 1970 (the "FCRA"), Pub. L. No. 91-508, 84 Stat. 1114, and adopts the two-tiered system of liability set forth in that earlier statute. Negligent noncompliance with the statute creates liability for actual damages and attorney's fees, *see* 15 U.S.C. § 1681*o*(a), while willful noncompliance creates liability for actual damages or statutory damages between $100 and $1,000, in addition to punitive damages and attorney's fees, *see id.* § 1681n(a). In interpreting the latter provision of the FCRA, the Supreme Court followed the principle that "where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." *Safeco Ins. Co. of Am.* v. *Burr*, 551 U.S. 47, 57 (2007) (collecting cases). *Safeco* focused on the distinction between willful and negligent misinterpretations of the FCRA's provisions, holding that "a company

7

subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

Courts have found that *Safeco* "defined the standard for all willful violations of the FCRA." *Cortez* v. *Trans Union, LLC*, 617 F.3d 688, 721 n.39 (3d Cir. 2010). Yet it is unclear how to apply the *Safeco* Court's standards for a knowing or reckless violation of the FCRA when the proper interpretation of the particular statutory provision is not in doubt.[4] If there is only one reasonable reading of the statute, does a willful violation flow automatically once knowledge of the statute's requirements is demonstrated? Or must there be awareness that the defendant's behavior violates or recklessly runs the risk of violating those requirements?

At least two district courts have recently adopted the latter approach, both relying on analogy between the two-tiered liability scheme of the FCRA and that of the Age Discrimination in Employment Act of 1967 ("ADEA"), Pub. L. 90-202, 81 Stat. 602. *See Crupar-Weinmann*, 2014 WL 2990110, at *3-4; *Vidoni* v. *Acadia Corp.*, No. 11 Civ. 448 (NT), 2012 WL 1565128, at *4 (D. Me. Apr. 27, 2012). Interpreting the ADEA's scheme, the Supreme Court held in *Trans World Airlines, Inc.* v. *Thurston* ("*TWA*") that "a violation of the Act was

---

[4] Defendants do not argue that they relied upon a permissible, albeit incorrect, interpretation of the requirements of 15 U.S.C. § 1681c, and such an argument would be particularly difficult to maintain in this case in the wake of the Clarification Act.

8

'willful' if the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." 469 U.S. 111, 126 (1985) (internal quotation marks and alterations omitted). By contrast, it rejected the notion that "a violation of the Act is 'willful' if the employer simply knew of the potential applicability of the ADEA." *Id.* at 127. Because the FCRA and the ADEA draw similar distinctions between negligent and willful violations, the *Crupar-Weinmann* and *Vidoni* courts concluded that the same standard of willfulness should apply.

      Plaintiff argues that the ADEA and the FCRA are apples and oranges. She correctly points out that the *TWA* Court rested its interpretation of willfulness in part on the fact that the ADEA requires that employers post notices of its requirements. Accordingly, "it would be virtually impossible for an employer to show that he was unaware of the Act and its potential applicability," so that a "broad standard [of willfulness] … would result in an award of double damages in almost every case." *TWA*, 469 U.S. at 128. Since there is no analogous requirement that merchants post FCRA or FACTA notices, there is less risk that a broad definition of willfulness in this context would frustrate Congress's intent to create a two-tiered liability scheme.

      This distinction between the ADEA and the FCRA may be more apparent than real, however. Because credit card companies have incorporated FACTA's requirements into their contracts, virtually every merchant has been provided information regarding these rules to a similar extent as Defendants. Thus, if the receipt of information regarding the statute's requirements is all that is

9

necessary, Congress's two-tiered liability scheme would effectively have negligence read out of the statute.  Of course, one could answer that this widespread awareness of FACTA is a happy accident, unanticipated by Congress, which should not let merchants off the hook.  Yet it would be odd to assume that Congress created a two-tiered liability scheme on the assumption that the negligence tier would come into play only where its statutory commands were unknown or incomprehensible.

Furthermore, post-*Safeco* courts have considered willfulness under the FCRA to be in harmony, rather than discord, with the meaning of willfulness in other civil statutes, including the ADEA.  *See Fryer* v. *A.S.A.P. Fire & Safety Corp.*, 658 F.3d 85, 91 (1st Cir. 2011) ("Thus, in the context of the ADEA, the [Fair Labor Standards Act], and the FCRA, the Supreme Court has held that an employer's violation is willful if the employer either knew or showed reckless disregard as to whether its conduct was prohibited by the statute." (collecting cases)); *cf. also Pfunk* v. *Cohere Commc'ns, LLC*, No. 12 Civ. 8971 (PAE), 2014 WL 2208012, at *15 (S.D.N.Y. May 28, 2014) (importing the ADEA's definition of willfulness into the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), Pub. L. 103-353, 108 Stat. 3149).  The Sixth Circuit has extended this symmetry to the Gun Control Act of 1968 ("GCA"), Pub. L. 90-618, 82 Stat. 1213-2, finding that the GCA did not "mean[] to deviate from [*Safeco*'s] classic definition of willfulness." *Armalite, Inc.* v. *Lambert*, 544 F.3d 644, 648 (6th Cir. 2008).  That court identified precisely the

same interpretive dilemma with regard to the GCA that confronts this Court with regard to the FCRA:

> One possibility is this: a dealer violates the statute when it (1) knows what its legal obligations are and (2) fails to comply with those obligations, whether that failure to comply was intentional, reckless or negligent. The other possibility is this: a dealer violates the statute when, with knowledge of what the law requires, it intentionally or knowingly violates the GCA's requirements or acts with plain indifference to them (i.e. recklessly violates them).

*Id.* at 647. The Court "embrace[d] the second interpretation for several reasons," *id.*, including its desire to preserve a common interpretation of willfulness across statutory contexts. Similarly, the First Circuit looked to *Safeco* in interpreting "willfulness" under USERRA to "require[] something more than merely showing that an employer knew about the [statute] and its potential applicability in the workplace." *Fryer*, 658 F.3d at 91-92 (second alteration in original) (internal quotation marks and citation omitted).

Although the Second Circuit has not explicitly laid out the standard for a willful violation of the FCRA, this Court finds the reasoning of other Circuits persuasive as applied to the FCRA and FACTA, and thus concludes that a defendant willfully violates FACTA when, with knowledge of what the law requires, it intentionally, knowingly, or recklessly violates those requirements.

> **b.    A Plaintiff Can Meet Her Burden at the Motion to Dismiss Stage by Pleading that the Defendant Had a Sufficient Level of Knowledge of FACTA's Requirements**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s]

11

favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)). A plaintiff is entitled to relief if she alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible." (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 570)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Some courts applying *Safeco* to violations of FACTA through inclusion of excess data on receipts have held that a complaint "adequately alleges willfulness because it avers that [a defendant] was on notice of FACTA's truncation requirement, and thus it is plausible to infer either a knowing or reckless violation from the facts pleaded." *Lavery* v. *RadioShack Corp.*, No. 13 Civ. 5818, 2014 WL 2819037, at *2 (N.D. Ill. June 23, 2014); *accord Dover* v. *Shoe Show, Inc.*, No. Civ. A. 12-694, 2013 WL 1748337, at *2-3 (W.D. Pa. Mar.

19, 2013), *report and recommendation adopted*, No. Civ. A. 12-694, 2013 WL 1748174 (W.D. Pa. Apr. 23, 2013); *Buechler* v. *Keyco, Inc.*, No. Civ. WDQ-09-2948, 2010 WL 1664226, at *2-3 (D. Md. Apr. 22, 2010); *In re TJX Cos.*, No. 07-MD-1853-KHV, 2008 WL 2020375, at *2 (D. Kan. May 9, 2008).[5]  Other courts have held that "[i]n cases where the Defendant is aware of a statute's requirements, the Plaintiff must also allege that there was something more than a negligent violation, i.e. a voluntary, deliberate, or intentional violation." *Vidoni*, 2012 WL 1565128, at *4; *accord Crupar-Weinmann*, 2014 WL 2990110, at *3-4.

This Court agrees with the latter camp that, applying the *TWA* Court's standard for adequately pleading willful ADEA violations, it is insufficient for a plaintiff to show merely that a defendant knew of the potential applicability of FACTA or that the statute was "in the picture." *Crupar-Weinmann*, 2014 WL 2990110, at *3 (quoting *TWA*, 469 U.S. at 127-28).  This Court further agrees that a complaint "must plead sufficient facts to support a plausible inference that defendant knew that its conduct was violating the statute, and not simply that defendant knew about the existence of the statutory provision at issue." *Id.* at *4.

At the same time, courts should be wary of establishing an unreasonably high bar to surviving a motion to dismiss, lest the FCRA's willfulness tier be all

---

[5]  At least one Court has suggested that, where a defendant printed a receipt in violation of FACTA, the *only* available defense is that there is a reasonable interpretation of the statute through which the receipt was FACTA-compliant.  *See Katz* v. *ABP Corp.*, No. 12 Civ. 4173 (ENV), 2013 WL 2444605, at *3 (E.D.N.Y. June 4, 2013).

13

but eliminated. If plaintiffs were required to demonstrate in their pleadings that a defendant actually knew of its own violative behavior, only the rare handful of cases would be able to establish, at the motion to dismiss stage, that a defendant was actually informed of their violation of the statute. *See, e.g.*, *Zaun* v. *Tuttle, Inc.*, No. Civ. 10-2191 (DWF) (JJK), 2011 WL 1741912, at *2 (D. Minn. May 4, 2011) (denying motion to dismiss where a third party "warned Defendant that upgrades were necessary in order for Defendant to comply with the laws governing credit card processing and truncation, but Defendant ignored these warnings"). Moreover, it is implausible to hold that *no* level of knowledge of the statute's requirements could give rise to an inference of knowledge of violation. Imagine, to take an extreme case, that every employee of a restaurant were given a three-hour lecture on FACTA's requirements, focused explicitly on the requirement that expiration dates not be printed on customer's receipts, and then immediately returned to serve the dinner crowd, printing off hundreds of receipts over the course of the evening and carrying them to the customers. It would be plausible to infer — indeed, implausible *not* to infer — that at some point the restaurant or its agents became aware of a violation of FACTA's requirements, or at least recklessly endeavored to avoid learning of a potential violation.

The key, then, is for a complaint to cross the line from a level of knowledge of FACTA's requirements from which it merely possible to infer a willful violation, to a level from which it is plausible to infer such a violation. *Cf. Twombly*, 550 U.S. at 557. And that line may — but does not necessarily —

14

lie somewhere between the Amended Complaint and the Proposed Complaint in the instant litigation. The Amended Complaint offers as its primary demonstration of knowledge two brochures, each dozens of pages in length, which contain a single remonstration each against printing expiration dates. While parties are to be bound to their contracts, it is far more plausible to infer that these provisions were negligently overlooked than that Defendants acquired absolute knowledge of FACTA and disregarded it. Furthermore, neither of these brochures indicates that the importance of removing expiration dates stems from FACTA itself, as opposed to Visa's or MasterCard's determination of best practices. Similarly, the fact that Defendants removed all but the last four digits of credit card numbers on their receipts, in partial compliance with FACTA, fails to persuade the Court that the failure to fully comply was willful rather than negligent. Given the "obvious alternative explanation" of negligence, such allegations appear "merely consistent with" a willful violation. *Twombly*, 550 U.S. at 567, 557.

The Proposed Complaint paints a different picture. It alleges that, in addition to the general publicity around FACTA's requirements, Defendants were notified by multiple sources at least monthly of requirements created by FACTA itself, and that Defendants negotiated an insurance contract that specifically highlighted the importance of compliance with FACTA. These facts may or may not demonstrate that Defendants were sufficiently informed so as to plausibly infer a willful violation, but they go far enough that repleading (and rebriefing) might not be futile.

**B.     The Motion to Dismiss Is Denied Without Prejudice to Refiling**

Except for two pages in Defendants' Reply Brief, the parties' briefing addresses the merits of the pleadings contained in the Amended Complaint rather than the Proposed Complaint. This Court recently confronted the same situation in *American Stevedoring, Inc.* v. *International Longshoreman's Association*, No. 13 Civ. 0918 (KPF), 2014 WL 3582758 (S.D.N.Y. July 18, 2014). While the difference between the complaints is not so great here as in that case, the same logic applies. This Court is not prepared to decide that Plaintiff's new allegations fail without the benefit of briefing in their defense, and suspects that "Defendants, given their very limited opportunity to respond to these new allegations, would likely object if the Court decided that the new claims salvaged [Plaintiff's] allegations." *Id.* at *3. Accordingly, the motion to dismiss is denied without prejudice to refiling.

**C.     The Motion to Strike Is Granted**

Plaintiff does not oppose Defendant's motion to strike from the class anybody who has not dined Wolfgang's since October 10, 2008.[6] Where a nonmovant does not contest a motion to dismiss a portion of her claims, the court may construe those claims as abandoned. *See, e.g., Dawson* v. *City of New York*, No. 13 Civ. 5956 (JMF), 2014 WL 5020595, at *3 (S.D.N.Y. Oct. 8, 2014). Even if the claim to represent class members who dined at Wolfgang's

---

[6]   Curiously, the Proposed Complaint still defines the class as "all persons or entities to whom Defendants provided an electronically printed receipt at the point of sale or transaction, in a sale or transaction occurring after June 3, 2008 …." (Prop. Compl. ¶ 9). The Court expects Plaintiff to heed this Order and its own concession should it file the Proposed Complaint as a Second Amended Complaint.

16

between June 3, 2008, and October 9, 2008, were not abandoned, Defendants are correct that FACTA's statute of limitations provides that no claim may be brought more than "5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p.  As Plaintiff's initial complaint was filed October 10, 2013, the class may not include any members whose claims arose prior to October 10, 2008.  Accordingly, such members are stricken from the class.

## CONCLUSION

For the reasons set forth in this Opinion, Defendants' motion to dismiss is DENIED without prejudice to refile.  Defendants' motion to strike from the class members whose claims arose prior to October 10, 2008, is GRANTED.  Plaintiff is given leave to file the Proposed Complaint contained in Exhibit H of her opposition brief (with the modification of the class definition indicated above) as a Second Amended Class Action Complaint no later than **December 1, 2014**.  This Court does not anticipate any other amendments of the complaint, and thus any further attempts to amend will be construed as modifications of a court scheduling order that would require a demonstration of good cause under the standard set forth in Federal Rule of Civil Procedure 16(b).

Finally, the parties are hereby ORDERED to appear for a conference on **December 17, 2014, at 11:00 a.m.** in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York, to discuss an expedited briefing schedule in the event that Defendants wish to refile their

motion to dismiss.  Any deadlines to answer specified by Rules 12 or 15 of the Federal Rules of Civil Procedure are stayed pending further order of the Court.

The Clerk of Court is directed to terminate the motion pending at Docket Entry 13.

SO ORDERED.

Dated:     November 14, 2014
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge