# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

CYNTHIA M. FULLWOOD,                 )
INDIVIDUALLY AND ON BEHALF           )          No. 13 Civ. 7174 (KPF) (HP)
OF ALL OTHERS SIMILARLY              )
SITUATED,                            )
                                     )
              Plaintiff,              )
                                     )
              v.                      )
                                     )
WOLFGANG'S STEAKHOUSE, INC.          )
AND ZMF RESTAURANTS LLC,             )
                                     )
              Defendants.             )


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................. 1

II.   LEGAL STANDARD ............................................................................ 4

   a.    Standard For Dismissal ............................................................ 4

   b.    Relevant FACTA Sections ......................................................... 5

   c.    *SAFECO INS. CO. of AMERICA v. BURR* .................................... 6

III.  PLEADED FACTS ............................................................................... 6

IV.   ARGUMENT ...................................................................................... 9

   A.    Defendants Knew Of Their Obligation Not To Print Expiration Dates ..................... 9

      a.   Defendants Signed Contracts, Negotiated Insurance, and Received Notices Not to Print
           Credit Card Expiration Dates ..................................................... 9

      b.   Defendants' D'Amato Declaration Should Be Struck or Ignored ................................. 14

      c.   The D'Amato Declaration Does Not Refute Plaintiff's Allegations ............................ 14

      d.   Motive Is Irrelevant ................................................................ 15

      e.   Defendants' Cases Do Not Support Dismissal .................................. 15

   B.    Defendants' Actions Were Objectively Reckless ...................................... 16

      a.   Definition of Willfulness .......................................................... 18

      b.   Defendants' Pattern and Practice of Violations Demonstrates They Were   Reckless .. 20

      c.   Plaintiff's Interpretation Most Effectively Upholds FACTA's Two-tiered Liability
           System ................................................................................. 21

      d.   Congress Refused The Partial Compliance Must Mean Negligence Defense .............. 23

      e.   Defendants' Other Arguments For Dismissal Are Unavailing ...................... 24

V.    CONCLUSION ................................................................................. 24

# **TABLE OF AUTHORITIES**

## Cases

*Armalite, Inc.* v. *Lambert,* 544 F.3d 644 (6th Cir. 2008)....................................................... 3, 20, 21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................... 4, 25

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) .............................. 5

*Beck v. Prupis,* 529 U.S. 494 (2000).......................................................................................... 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................................. 4, 5, 25

*Buechler v. Keyco, Inc.*, No. Civ. WDQ-09-2948, 2010 WL 1664226
   (D. Md. Apr. 22, 2010) ..................................................................................... 11, 14, 21, 24

*Cortez v. Trans Union, LLC,* 617 F.3d 688 (3d Cir. 2010).......................................................... 20

*Cushman v. Trans Union Corp.*, 115 F.3d 220 (3rd Cir 1997)..................................................... 20

*Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374 (S.D.N.Y. 2013) ......................... 14

*Dover v. Shoe Show, Inc.*, No. 12-694, 2013 U.S. Dist. LEXIS 59418
   (W.D. Pa. March 19, 2013)........................................................................................... 11, 14, 21

*Farmer v. Brennan*, 511 U.S. 825 (1994) .............................................................................. 3, 19

*Faulkner v. Beer*, 463 F.3d 130 (2d Cir. 2006)........................................................................... 14

*Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241 (3d Cir. 2012)......................................................... 3

*Gardner v. Appleton Baseball Club, Inc.*, No. 09-cv-00705-WCG,
   2010 U.S. Dist. LEXIS 31653 (E.D. Wis. March 31, 2010)................................................... 16

*Gerrish Corp. v. Universal Underwriters Ins. Co.,* 947 F.2d 1023 (2d Cir. 1991) ...................... 24

*Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329 (9th Cir. Cal. 1995)............................... 6

*In re Parmalat Securities Litigation*, 501 F. Supp. 2d 560 (S.D.N.Y. 2007) ................................ 4

*In re TJX Companies, Inc.*, No. 07-md-1853 (KHV), 2008 U.S. Dist. LEXIS 38258
   (D. Kan. May 8, 2008) ................................................................................................. 11, 14, 21

*Jones v. Halstead Mgmt. Co., LLC*, No. 14-cv-3125, 2015 U.S. Dist. LEXIS 12807
(S.D.N.Y. Jan. 27, 2015) ................................................................................................... 3, 17

*Katz v. ABP Corp.*, No. 12-cv-04173-ENV, 2013 U.S. Dist. LEXIS 78476
(E.D.N.Y. June 4, 2013) ..................................................................................................... 18, 19

*Komorowshi v. All-American Indoor Sports, Inc*., no. 13-2177-SAC,
2013 U.S. Dist. LEXIS 125747 (D. Kansas Sept. 4, 2013) .................................................... 16

*Kubas v. Standard Parking Corp.*, 594 F. Supp. 2d 1029 (N.D. Ill. 2009) ................................ 11

*Lavery v. RadioShack Corp*., No. 13 Civ 5818, 2014 U.S. Dist. LEXIS 85190,
(N.D. Ill. June 23, 2014) ..................................................................................................... 14, 21

*Levy ex rel. ImmunoGen Inc. v. Southbrook Intl. Invs., Ltd.*, 263 F.3d 10
(2d Cir. 2001) ....................................................................................................................... 4

*Long v. Tommy Hilfiger USA, Inc.*, 671 F. 3d 371 (3d Cir. 2012) ............................................. 23

*Mathews v. Government Emples. Ins. Co*., 23 F. Supp. 2d 1160 (S.D. Cal. 1998) ...................... 4

*S.W. v. City of New York*, 2014 U.S. Dist. LEXIS 132973 (E.D.N.Y. Jan 28, 2014) .................. 21

*Safeco Ins. Co. of Am.* v. *Burr,* 551 U.S. 47 (2007) ............................................................... passim

*Seamans v. Temple Univ.*, 744 F.3d 853 (3d Cir. 2014) ......................................................... 3

*Seo v. CC CJV American Holdings, Inc.*, No. 11-cv-05031-DDP,
2011 U.S. Dist. LEXIS 120246 (C.D. Cal. Oct. 18, 2011) ...................................................... 16

*Smith v. HireRight Solutions, Inc.,* 711 F. Supp. 2d 426 (E.D. Pa. 2010) ............................... 3, 21

*Sullivan v. Greenwood Credit Union*, 520 F.3d 70 (1st Cir. 2008) ......................................... 20

*Tempelman v. Trans Union, LLC,* No. 14-4922, 2015 U.S. Dist. LEXIS 7615
(D.N.J. Jan. 22, 2015) ......................................................................................................... 3, 21

*Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111 (1985) ......................................... 18, 20, 23

*Troy v. Home Run Inn, Inc.*, No. 07 C 4331, 2008 WL 1766526
(N.D. Ill. April 14, 2008) ..................................................................................................... 12

*Vidoni v. Acadia Corp*., No. 11-cv-00448-NT, 2012 U.S. Dist. LEXIS 59967
(D. Me. April 27, 2012) ....................................................................................................... 16

**Statutes**

15 U.S.C. §1681n.................................................................................................. 2, 5, 6

15 U.S.C. §1681c .................................................................................................... 1, 5

**Other Authorities**

Department of Justice, Bureau of Justice Statistics, "Victims of Identity Theft, 2012".............. 22

Rosenberg, N. "28 Are Indicted in the Theft of Steakhouse Patrons' Credit Card Information."
  *New York Times* Nov. 19, 2011: A17. Print............................................................... 9

**Rules**

Fed. R. Civ. P. 8 .................................................................................................... 4, 25

Fed. R. Civ. P. 12(b)(6)........................................................................................... 1, 4

**Treatises**

Prosser and Keeton § 34, Restatement (Second) of Torts § 500 (1965)........................... 10, 19, 34

Plaintiff Cynthia M. Fullwood, by and through her undersigned counsel, respectfully submits this memorandum of law in opposition to Defendants Wolfgang's Steakhouse, Inc. and ZMF Restaurants LLC Motion to Dismiss Plaintiff's Second Amended Class Action Complaint (the "SAC")[1] pursuant to Fed. R. Civ. P. 12(b)(6).

## I.   PRELIMINARY STATEMENT

Plaintiff brings this action under the 2003 amendment to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*, and its amendment, the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), 15 U.S.C. § 1681c(g), over a credit card transaction that took place in Defendants' restaurant located in Manhattan.

Congress enacted FACTA to combat the rampant and destructive pattern of identity theft originating from thieves stealing and exploiting credit card information. In order to protect the public, Congress prohibited merchants from printing receipts from credit card purchases[2] that display either: "more than the last 5 digits of the card number *or the expiration date*." 15 U.S.C. § 1681c(g) (emphasis added). Commensurate with the high probability of harm that emanates from identity theft, Congress included harsh penalties for any merchant that recklessly failed to implement this simple law.   Congress recognized that absent these statutory protections merchants would have no motive to protect consumers from identity thieves.

Plaintiff's SAC plausibly alleges a willful violation of FACTA. First, Plaintiff has plausibly pleaded that Defendants knew about FACTA, including that Defendants negotiated a liability insurance contract that specifically highlighted the importance of compliance with FACTA (¶¶67-70); and they were notified by multiple sources not to print expiration dates (¶¶61-64). Additional facts pleaded in the SAC only increase the plausibility that Defendants

---

[1]  References to "¶__" are to the corresponding paragraph(s) in the SAC.

[2]  References to credit cards also include debit cards.

knew of the eight year old law. Specifically, that: (i) there was extensive publicity surrounding the FACTA truncation requirement; (ii) in their contracts with Visa, MasterCard, and other credit card companies, Defendants contractually agreed to not print the expiration dates (¶¶54-55); and (iii) most tellingly, Defendants demonstrated knowledge of the omitted **four** words ("or the expiration date")[3] by complying with the seven words ("last 5 digits of the card number") immediately preceding them. In total, Plaintiff has alleged facts plausibly demonstrating "awareness that the defendant's behavior violates or recklessly runs the risk of violating [the statute]." Order Denying Defendants' Motion to Dismiss the Amended Class Action Complaint ("Order"), dated November 14, 2014, at 8 (Dkt. 26).

Defendants' primary argument on why they lacked knowledge of their violations is a request for the benefit of the doubt—it is implausible, they argue, to believe that a party would ever knowingly violate the law without benefit to itself. If such a maxim were true, 15 U.S.C. § 1681n(a)(1) would be read out of the statute, as there is almost never a benefit to a merchant for printing credit card expiration dates. It is far more plausible that *at least one* of the litany of communications from Defendants' credit card issuers, merchant banks, Point of Sale (POS) terminal (*i.e.*, cash register) providers, and trade associations found its way through during Defendants' 7 years of endangering its consumer's identities.

Second, while this Court has received ample briefing on Defendants' knowledge, no mention has been made concerning Defendants' objectively unreasonable recklessness. [4] *See*

---

[3] It is more plausible that a person reading part of a sentence would continue to read the rest of that sentence than that they would not.

[4] Although the word "reckless" appears in the prior order, both the briefing and the Court's analysis focused on whether Defendants subjectively knew what they were doing was illegal. *Compare* Order at 7 ("Ultimately, a willful violation does not require merely that a defendant *know* of FACTA's requirements and violate them, but *also* that the defendant have knowledge of or recklessness as to the fact of its behavior violates the statute") (emphasis added); and Order at

Order at 7 (willfulness includes "not only knowing violations of a standard, but reckless ones as well.") (quoting *Safeco Ins. Co. of Am.* v. *Burr,* 551 U.S. 47, 57 (2007)). Willfulness may also be proven where the plaintiff demonstrates the defendant was "reckless[] as to the fact that its behavior violates the statute." Order at 7. Recklessness is measured objectively, and does not take into account the defendant's subjective knowledge as to the existence of the statute.

Since the Court's Order, a court in this district used this alternate analyses to hold that a plaintiff had sufficiently pleaded that the defendant violated the FCRA. *Jones v. Halstead Mgmt. Co., LLC*, No. 14-cv-3125, 2015 U.S. Dist. LEXIS 12807 (S.D.N.Y. Jan. 27, 2015) (Caproni, J). *Jones* joined other district courts in finding willfulness under the FCRA based on the defendant's reckless conduct being "objectively unreasonable."

Further, Plaintiff has pleaded a pattern of objectionable conduct without justification that rises to the level of reckless disregard. *See Tempelman v. Trans Union, LLC,* No. 14-4922, 2015 U.S. Dist. LEXIS 7615, at \*13 (D.N.J. Jan. 22, 2015); *Smith v. HireRight Solutions, Inc.,* 711 F. Supp. 2d 426, 435 (E.D. Pa. 2010); *see also Armalite, Inc.* v. *Lambert,* 544 F.3d 644, 649 (6th Cir. 2008) (multiple violations "amounted to reckless violations of known legal obligations or what comes to the same thing: a plain indifference to known legal obligations.").

Attached to the privilege of accepting credit cards, Defendants expressly accepted duties to multiple credit card companies, to its insurer, and to its thousands of customers to protect their

---

7 ("If there is only one reasonable reading of the statute, does a willful violation flow automatically once knowledge of the statute is demonstrated? Or *must there be awareness* that the defendant's behavior violates or recklessly runs the risk of violating the requirements."), with *Safeco*, 551 U.S. at 68, n.18 (explaining why civil recklessness does not involve the defendant's subjective knowledge: "Unlike civil recklessness, criminal recklessness also requires subjective knowledge on the part of the offender") (citing *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994)); *Seamans v. Temple Univ.*, 744 F.3d 853, 868 (3d Cir. 2014) ("An actor's 'subjective bad faith' is irrelevant—the test is whether the actor's conduct was 'objectively unreasonable.'") (quoting *Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241, 248-49 (3d Cir. 2012)).

credit card information.  This pattern of printing consumers' credit card expiration dates every day for seven years is objectively unreasonable.  *Mathews v. Government Emples. Ins. Co.*, 23 F. Supp. 2d 1160, 1164-65 (S.D. Cal. 1998):

> The Court finds as a compelling standard of law that individuals who recklessly disregard *any* of their important responsibilities under the FCRA may be liable for punitive damages pursuant to 15 U.S.C. § 1681n. Congress did not intend to enable mass-users of credit reports to evade meaningful liability for repeated violations of their 'grave responsibilities' under the FCRA by sticking their heads in the sand and pleading ignorance of the law.

## II.  LEGAL STANDARD

### a. Standard For Dismissal

A complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 is satisfied so long as a claim "has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Dismissal is warranted only where a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The focus should properly be on the facts pled. Accordingly, in deciding such a motion, the trial court must "accept[] as true all well-pleaded factual allegations and draw[] all reasonable inferences in the plaintiff's favor." *In re Parmalat Securities Litigation*, 501 F. Supp. 2d 560, 572 (S.D.N.Y. 2007) (citing *Levy ex rel. ImmunoGen Inc. v. Southbrook Intl. Invs., Ltd.*, 263 F.3d 10, 14 (2d Cir. 2001)).

So long as a plaintiff provides the "grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level,'" dismissal under Fed. R. Civ. P. 12(b)(6) is improper. *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

### b. Relevant FACTA Sections

In response to the growing danger to a person's identity and personal information in the wrong hands, Congress enacted FACTA to protect against identity theft. In pertinent part, Congress provided (15 U.S.C. § 1681c(g)):

> [N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

FACTA details the liability for willful noncompliance (15 U.S.C. § 1681n):

> Any person who willfully fails to comply with any requirement imposed under his subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of —
>
> (1) (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000, whichever is greater;
>
> . . . .
>
> (2) such amount of punitive damages as the court may allow; and
>
> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

After passing FACTA, Congress was aware of the litany of merchants, such as Defendants here, claiming ignorance of the law as a defense. During the three and one-half years following the passing of FACTA, an avalanche of class action lawsuits were filed against merchants that partially complied with FACTA by truncating credit card numbers, but failing to remove expiration dates. To address this problem, Congress enacted the Credit and Debit Card Receipt Clarification Act of 2007 (the "Clarification Act"), 15 U.S.C. § 1681n(d). The Clarification Act made it clear that merchants *must not print expiration dates* on credit card receipts. Congress's "consumer oriented objectives support a liberal construction of the FCRA." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. Cal. 1995).

**c.** *SAFECO INS. CO. of AMERICA v. BURR*

The Supreme Court has expressly rejected Defendants' argument that a plaintiff must demonstrate the defendants' knowledge in order to demonstrate willfulness under FACTA:

> [Defendants] argue that liability under § 1681n(a) for "willfully fail[ing] to comply" with FCRA goes only to acts known to violate the Act, not to reckless disregard of statutory duty, *but we think they are wrong.* . . . [W]e have generally taken [willfully] to cover not only knowing violations of a standard, but reckless ones as well." (citing *Bryan v. United States,* 524 U.S. 184, 191, 118 S. Ct. 1939, 141 L. Ed.2d 197 (1998); and *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 132-133, 108 S. Ct. 1677, 100 L. Ed.2d 115 (1988)) (emphasis added).[5]

The *Safeco* court held that a company subject to the FCRA acts in "reckless disregard" where company's action: 1) "is a violation under a reasonable reading of the statute's terms"; and 2) "shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69.[6]

## III. PLEADED FACTS

In 2003, FACTA was enacted in an effort to prevent identity theft and credit card fraud. The statute makes it more difficult for identity thieves to obtain consumers' credit card information by reducing the amount of information identity thieves could retrieve from found or stolen credit card receipts. (¶26). There was, however, confusion as to whether a violation required printing both more than the last five digits and the expiration date, or if printing either violated the statute. (¶37). In order to resolve the confusion, Congress unanimously passed, and the President signed, the Clarification Act in 2007. (¶38). The Clarification Act made clear that

---

[5]  *See also Safeco*, 551 U.S. at 69, n.9 (contrasting the civil meaning of "willful," where knowledge is not required, with the criminal meaning of "willful," where it is: "It is different in the criminal law. When the term 'willful' or 'willfully' has been used in a criminal statute, we have regularly read the modifier as limiting liability to knowing violations.").

[6]  The Supreme Court derives its "risk of violating the law" standard from the "high risk of harm" standard of recklessness at common law. *Id.*

noncompliance would be actionable and full compliance with the "expiration date" component of FACTA was extended to June 3, 2008. (¶41).

The Clarification Act stated that any merchant that had complied with the truncation requirement for credit card numbers on receipts, but left the expiration date on the receipt, would be in good faith compliance with the law.  Further, the Clarification Act was retroactive and affected cases pending at the time, excusing prior noncompliance.  (¶27).  The Clarification Act made clear, however, that going forward, noncompliance would be actionable.  Full compliance with the "expiration date" component of FACTA was extended to June 3, 2008.  (¶28).

In response to the passage of FACTA and the Clarification Act, businesses nationwide changed their credit card processing machines so that the prohibited information would not be printed on receipts.  (¶30).  VISA, MasterCard, the PCI Security Standards Council—a consortium founded by VISA, MasterCard, American Express, and JCB–companies that sell cash registers and other devices for the processing of credit card payments, and other entities informed Defendants about FACTA, including its specific requirements concerning the truncation of credit card numbers and prohibition of the printing of expiration dates, and Defendants need to comply with same.  (¶31).

FACTA requirements were also widely publicized among merchants.  (¶32).

Importantly, Defendants negotiated liability insurance coverage that specifically excluded FACTA coverage.[7]  On October 29, 2013, Defendants' insurance carrier notified Plaintiff's counsel that it was denying coverage to Defendants because, among other things, "The Policy specifically excludes violations of the Fair and Accurate Credit Transactions Act."  Commercial insurance coverage is negotiated for and requires the signature of senior management.  The

---

[7]  A copy of the insurance policy, with its explicit exclusion, is annexed to the Declaration of Eric J. Shiminoff, dated January 30, 2015, as Exhibit "F." ("Shiminoff Declaration.")

specifics of the coverage are closely monitored. In addition, the exclusions from an insurance policy can often be added back in by riders—at additional cost. Defendants' failure to eliminate a liability for which it had been excluded from insurance coverage further demonstrates its recklessness. (¶¶67-70).

In response to the passage of FACTA and the Clarification Act, VISA, MasterCard, the PCI Security Standards Council—a consortium founded by VISA, MasterCard, American Express, and JCB—companies that sell cash registers and other devices for the processing of credit card payments, and other entities informed Defendants about FACTA, including its specific requirements concerning the truncation of credit card numbers and prohibition of the printing of expiration dates, and Defendants' need to comply with same. (¶50).

The card issuing organizations required compliance with FACTA by contract. For example, Visa Rules, which are distributed to and binding upon all merchants that accept Visa-branded credit cards, expressly require that only the last four digits of an account number should be printed on the customer's copy of the receipt and "the expiration date should not appear at all." (¶55). Similarly, MasterCard Rules also explicitly required merchants to comply with FACTA's truncation requirements. (¶¶55-60). Finally, Defendants were sent information regarding FACTA's truncation requirements from its merchant bank, its Point of Sale provider, and/or trade associations. (¶¶62-64).

Defendants' knowledge of the FACTA requirements is also evidenced by its change to the credit card receipts to remove all but the last four digits of the card number. (¶65).

Defendants were aware of the danger of identity theft. In November 2011, a ring of identity thieves at a number of steakhouses in the New York Metropolitan area, including Wolfgang's, was indicted for stealing the credit card information of the restaurants' patrons. At the time, Manhattan District Attorney Cyrus R. Vance, Jr. said that identity theft was "one of the

fastest growing crimes in Manhattan." Rosenberg, N. "28 Are Indicted in the Theft of Steakhouse Patrons' Credit Card Information." *New York Times* Nov. 19, 2011: A17. Print. (¶66). Defendants knew of the truncation requirement and prohibition of the printing of expiration dates or were reckless in not knowing in light of the information readily available to it. (¶74).

Defendants accept Discover, American Express, Visa and MasterCard branded credit cards and, therefore, are parties to contracts requiring compliance with the foregoing requirements. (¶75).

## IV. ARGUMENT

### A. Defendants Knew Of Their Obligation Not To Print Expiration Dates

#### a. Defendants Signed Contracts, Negotiated Insurance, and Received Notices Not to Print Credit Card Expiration Dates

A violation of FACTA is willful where Defendants <u>knew</u> they were obligated not to print expiration dates on credit card receipts they were giving to their customers at the point of sale. *Safeco*, 551 U.S. at 57. Tellingly, Defendants nowhere argue that they did not know not to print the expiration dates. Defendants merely assert they were not willful.[8]

Defendants knew they needed to comply with FACTA because, among other things, Defendants: 1) negotiated and entered into liability insurance policies that excluded coverage for FACTA violations (¶67-70); 2) were sent a litany of periodic communications reminding them of their obligations (¶61-64); and 3) their knowledge of 15 U.S.C. § 1681c(g) is evidenced by their partial compliance with the provision.

---

[8]   Defendants are wrong—they were also reckless, because "[i]t is this high risk of harm, objectively assessed, that is the essence of recklessness at common law. *See* Prosser and Keeton § 34, at 213 (recklessness requires 'a known or obvious risk that was so great as to make it highly probable that harm would follow')." *Safeco*, 551 U.S. at 70; *see also id.,* at 70 (the recklessness standard turns on whether Defendants' application of the statute is "objectively unreasonable, and so [has] the 'unjustifiably high risk' of violating the statute. . . .").

Most importantly, Defendants negotiated liability insurance coverage that specifically excluded FACTA coverage. On October 29, 2013, Defendants' insurance carrier notified Plaintiff's counsel that it was denying coverage to Defendants because, among other things, "The Policy specifically excludes violations of the Fair and Accurate Credit Transactions Act." Commercial insurance coverage is negotiated for and requires the signature of senior management and the specifics of the coverage are closely monitored. In addition, the exclusions from an insurance policy can often be added back in by riders—at additional cost. Defendants' failure to eliminate a liability for which it had been excluded from insurance coverage is either knowing or reckless. (¶¶67-70).

Second, there was extensive publicity surrounding the FACTA truncation requirement. (¶32). *Dover v. Shoe Show, Inc.*, No. 12-694, 2013 U.S. Dist. LEXIS 59418, at *7-8 (W.D. Pa. March 19, 2013) (*adopted by* 2013 U.S. Dist. LEXIS 58101 (W.D. Pa. April 23, 2013)), sustained the complaint:

> Plaintiff's Complaint alleges facts concerning the publicity directed at merchants prior to and surrounding the 2003 passage of FACTA, including alerts from the Federal Trade Commission regarding merchant responsibilities to guard against identity theft after FACTA. <u>In addition, the Complaint alleges that Defendant was made aware of its compliance obligations by VISA manuals and guidelines, specifically requiring the elimination of an expiration date after July 1, 2006.</u> While the Complaint cites to trade publications not applicable to Defendant's line of business, the Complaint does allege sufficient publicity and guidance from credit card processors to place a sophisticated retailer with over 1,000 stores on notice of its obligations under FACTA. Finally, the Complaint alleges that nearly a decade after the passage of FACTA, despite being aware of FACTA's requirements, Defendant has not complied with the clear requirement to remove expiration dates from consumer receipts.
>
> In light of these contentions, the Court finds that the Complaint sufficiently alleges that Defendant's violation of FACTA was either knowing or reckless to satisfy the plausibility standard set forth in *Twombly* and *Iqbal*. (Emphasis added).

*See also Buechler v. Keyco, Inc.*, No. Civ. WDQ-09-2948, 2010 WL 1664226, at *2-3 (D. Md. Apr. 22, 2010) (denying motion to dismiss for failure to allege a willful violation where defendant issued a noncompliant receipt "despite the well-publicized enactment of FACTA provision in 2003; FTC guidance; and the 2007 Clarification Act (which required expiration date truncation); similar requirements in the private sector; and FACTA compliance by its competitors"); *Kubas v. Standard Parking Corp.*, 594 F. Supp. 2d 1029, 1031-32 (N.D. Ill. 2009) ("FACTA was enacted in 2003 and gave merchants three years within which to comply; Defendants knew about the requirement because <u>card issuers informed them and required compliance with the statute in their contracts with merchants</u> before the mandatory compliance date; and most of Defendants' peers brought their processes into compliance with FACTA but Defendants failed to comply.") (Emphasis added.); *In re TJX Companies, Inc.*, No. 07-md-1853 (KHV), 2008 U.S. Dist. LEXIS 38258, at *6-7 (D. Kan. May 8, 2008) ("defendants knew that federal law prohibited them from printing expiration dates on customer receipts. Congress enacted FACTA in 2003 and included a three-year grace period for retailers to comply with its terms. Several years prior to FACTA's effective date of December 4, 2006, major credit card companies and other payment processing companies informed defendants of FACTA's regulations concerning printed expiration dates. Well before the effective date, the credit card companies also devised and implemented policies which required retailers to comply with FACTA.") (Emphasis added.); *Troy v. Home Run Inn, Inc.*, No. 07 C 4331, 2008 U.S. Dist. LEXIS 30038, at *6 (N.D. Ill. April 14, 2008) ("Home Run Inn had three years to comply with FACTA's requirements after the statute was enacted; credit card issuers like VISA, MasterCard, Discover, and American Express informed Home Run Inn about FACTA's requirements and required compliance via contract; the statute's requirements were widely publicized among

11

retailers; and most of Home Run Inn's business peers and competitors brought their credit card receipts into compliance with FACTA.") (Emphasis added.).

Third, Defendants accept Discover, American Express, Visa, and MasterCard branded credit cards and, therefore, are parties to contracts that prohibit the printing of expiration dates on customer receipts. (¶52). Visa USA's contracts with the American merchants which accept Visa brand credit cards are defined in part in a manual entitled CARD ACCEPTANCE GUIDELINES FOR VISA MERCHANTS ("Visa Rules"). (¶53) (Annexed as Exhibit A to Declaration of Marvin L. Frank In Support of Plaintiff's Opposition to Defendants' Motion to Dismiss the Amended Class Action Complaint ("Frank Declaration")) (Dkt. 18).

> *The Card Acceptance Guidelines for Visa Merchants* is a comprehensive manual for all businesses that accept Visa transactions in the card-present and/or card absent environment. The purpose of this guide is to provide merchants and their back-office sales staff with accurate, up-to-date information and best practices to help merchants process Visa transactions, understand Visa products and rules, and protect cardholder data while minimizing the risk of loss from fraud. (2011 edition).

Under the heading "Visa Rules," (page 11), it states that "Merchants must follow basic card acceptance rules for all Visa transactions." Visa Rules (page 13) prohibits the printing of the expiration date on credit card receipts:

> **Suppressed Account Number and Expiration Date**
>
> Ensure that the Visa account number is suppressed in accordance with Visa rules and local laws and regulations. Visa recommends that all but the last four digits of the account number be suppressed on the cardholder copy of the transaction receipt, unless otherwise required under local law.
>
> **The expiration date should not appear at all on the cardholder copy of the transaction receipt.** Existing point-of-sale terminals must comply with these requirements. To ensure that your point-of-sale terminals are properly set up for account number and expiration date suppression, contact your acquirer. (Emphasis added.)

Similarly, MasterCard's agreements with the American merchants that accept MasterCard brand credit cards are defined in part in a manual entitled SECURITY RULES AND PROCEDURES, Merchant Edition ("MasterCard Rules") (Exhibit B to the Frank Declaration). The latest edition is dated 30 August 2013. Under the heading "Customer Obligations, 1.1 Compliance with the Standards," (page 1-1), it states that "This manual contains Standards. Each Customer must comply fully with these Standards." MasterCard Rules (page 3-8) prohibits the printing of the expiration date on credit card receipts:

### 3.11.4   Primary Account Number Truncation and Expiration Date Omission

The Cardholder and Merchant receipts generated by all electronic POS Terminals, whether attended or unattended, cash disbursement receipts generated by electronic POS Terminals at financial institutions, and each printed ATM Terminal receipt <u>must omit the Card expiration date</u>. In addition, the Cardholder receipt generated by all electronic POS Terminals, whether attended or unattended, and each printed ATM Terminal receipt must reflect only the last four (4) digits of the PAN. All preceding digits of the PAN must be replaced with fill characters, such as "X," "*," or "#," that are neither blank spaces nor numeric characters. (Emphasis added.)

Fourth, it remains highly probative that Defendants' knowledge of the FCRA's requirements is demonstrated by its truncation of the credit card number itself, which appears only four words away from the statutory requirement at issue.[9]

From all of these facts, Plaintiff has sufficiently alleged that it is plausible that Defendants must have known about the violations. *Lavery v. RadioShack Corp.*, No. 13 Civ. 5818, 2014 U.S. Dist. LEXIS 85190, 2014 WL 2819037, at *2 (N.D. Ill. June 23, 2014); *accord Dover v. Shoe Show, Inc.*, No. Civ. A. 12-694, 2013 U.S. Dist. LEXIS 59418, 2013 WL 1748337, at *2-3 (W.D. Pa. Mar. 19, 2013), *report and recommendation adopted*,, No.

---

[9]  It is more plausible that a person reading part of a sentence would continue to read the rest of that sentence than that they would not.

Civ. A. 12-694, 2013 U.S. Dist. LEXIS 58101, 2013 WL 1748174 (W.D. Pa. Apr. 23, 2013); *Buechler v. Keyco, Inc.*, 2010 WL 1664226, at *2-3; *In re TJX Cos.*, No. 07-MD-1853-KHV, 2008 U.S. Dist. LEXIS 38258, 2008 WL 2020375, at *2 (D. Kan. May 9, 2008).

### b.   Defendants' D'Amato Declaration Should Be Struck or Ignored

Defendants' attempt to include their own facts from outside the four corners of the complaint[10] is inappropriate. *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) ("Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself."). Accordingly, this court should strike, or at least not consider, Ms. D'Amato's declaration. *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 388 (S.D.N.Y. 2013) (Furman, J).

### c.   The D'Amato Declaration Does Not Refute Plaintiff's Allegations

Even assuming, *arguendo,* that such a declaration was appropriate in support of a motion to dismiss a complaint—which it is not—the contents of Ms. D'Amato's declaration do not refute the subject allegations.  First, the declaration does *not* state that the allegations regarding Defendants' receipt of such notifications are untrue. Second, the Bank Associates Merchant Services ("BAMS") statements annexed to the declaration each contain a section for important notifications that is entitled "!ATTENTION!"   D'Amato Declaration, Exhibit A (emphasis in original). The Declaration does not say whether this section was ever used to notify recipients regarding FACTA's truncation requirements (*e.g.,* when FACTA was passed, when FACTA was amended). The Declaration does not address whether the statement ever contained such warnings regarding FACTA's truncation requirements, or how often were these warnings printed. Third, as anyone who receives monthly bank statements can attest, these types of statements are often accompanied by inserts. The Declaration does not address such inserts. How often did

---

[10]   *See* Declaration of Lydia D'Amato, sworn to January 29, 2015; Def. Br. at 7.

Defendants receive inserts notifying them about FACTA's truncation requirements (*e.g.,* from BAMS, Amex, etc.)? How often did such inserts arrive with Defendants' monthly statements (*e.g.,* when FACTA was passed, when FACTA was amended, etc.)? Only discovery will disclose the answers to the questions above, which are critical to determining what Defendants knew and when they knew it.[11]

### d.  Motive Is Irrelevant

Defendants' attempt to invent a motive requirement should be ignored as Defendants could not find a single FCRA case in support. Def. Br. at 11-12. The statutory scheme contemplates a merchant's total disinterest in whether they print credit card numbers and receipts. As the printing or not-printing of credit card numbers has nothing to do with running a restaurant, requiring that the Defendant have a "motive" to violate the statute would totally eviscerate FACTA's two-tiered liability structure, as no defendant would ever have a motive to print the numbers. Such a reading finds no place in the large body of FCRA case law.

### e.  Defendants' Cases Do Not Support Dismissal

Defendants reliance on *Seo v. CC CJV American Holdings, Inc.*, No. 11-cv-05031-DDP, 2011 U.S. Dist. LEXIS 120246 (C.D. Cal. Oct. 18, 2011), *Gardner v. Appleton Baseball Club, Inc.*, No. 09-cv-00705-WCG, 2010 U.S. Dist. LEXIS 31653 (E.D. Wis. March 31, 2010), and *Vidoni v. Acadia Corp.*, No. 11-cv-00448-NT, 2012 U.S. Dist. LEXIS 59967 (D. Me. April 27, 2012) is misplaced. Plaintiff here alleges facts that are missing in the pleadings at issue in *Gardner, Seo*, and *Vidoni*.[12] Specifically, Plaintiff alleges not only that Defendants are parties to

---

[11]   If the Court considers Ms. D'Amato's declaration, Plaintiff requests the right to depose her and file a supplemental brief.

[12]   *Vidoni* turned on a very unusual fact pattern, where "The Court found that Defendant had complied with FACTA at its other locations, indicating its non-compliance at one location was

contracts with VISA, MasterCard, and American Express,  but that such credit card companies also "informed" defendants "about FACTA, including its specific requirements concerning the truncation of credit card numbers and prohibition of the printing of expiration dates" and their "need to comply with same." (¶¶49 - 60).

### B.  Defendants' Actions Were Objectively Reckless

Regardless of whether Plaintiff has demonstrated willfulness through Defendants' subjective knowledge, Plaintiff has objectively demonstrated Defendants' recklessness as defined by *Safeco.* The question of Defendants' recklessness ultimately boils down to a question of common sense: how many years must a business operate primarily by accepting credit cards before its failure to investigate and implement the credit card laws demonstrates "a reckless disregard to [its] statutory duty," that is "objectively unreasonable." *Jones,* 2015 U.S. Dist. LEXIS 12807 at *17 (quoting *Safeco*, 551 U.S. at 57).

In *Jones*, the plaintiff alleged a violation of the FCRA, Section 1681b(b)(2), which precludes procuring a consumer report for employment purposes without first providing a clear and conspicuous disclosure to the consumer. The defendant argued it could not have been willful, because it subjectively could not have known it was violating the law, having relied on a third-party vendor to provide FCRA-compliant disclosures, as well as having reasonably believed its interpretation was compliant with the law. *Id.,* 2015 U.S. Dist. LEXIS 12807 at *18.

Rejecting any defenses relating to the defendant's knowledge, Judge Caproni followed *Safeco*:

> "Willful" in the FCRA context means "reckless disregard of statutory duty."
> *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 57, 127 S. Ct. 2201, 167 L.
> Ed. 2d 1045 (2007). An erroneous reading of the statutory requirements of the

---

inadvertent rather than knowing." *Komorowski v. All-American Indoor Sports, Inc.*, no. 13-2177-SAC, 2013 U.S. Dist. LEXIS 125747, at *9 (D. Kansas Sept. 4, 2013).

FCRA disclosure requirements is not "reckless" unless it is "objectively unreasonable." *Id.* at 69. Plaintiff contends that the plain language of the statute suggests that a disclosure that includes a liability waiver deviates so far from the FCRA requirement as to be "objectively unreasonable." Pl. Mem. at 21-22. The Court agrees with Plaintiff that the Amended Complaint adequately alleges willfulness. *Id.*

Essentially, the *Jones* Court held that where the FCRA is clear, conduct by a defendant that deviates "so far from the FCRA requirements" is "objectively unreasonable," and therefore reckless. *Cf.* Order at 8 ("Yet it is unclear how to apply the *Safeco* Court's standards for a knowing or reckless violation of the FCRA when the proper interpretation of the particular statutory provisions is not in doubt."). Such an interpretation of the statute is logical and avoids the perverse result of encouraging Defendants to argue that they so effectively remained ignorant of their duties that they simply cannot be held liable for systematically breaching those duties thousands of times.  If effective, Defendants' armor of ignorance argument will disincentivize merchants from ever going through the expense of complying with FACTA.

In accordance with the analysis in *Jones*, Plaintiff has alleged that Defendants operate their business recklessly. First, the aggressive argument that Defendants make concerning their total ignorance demonstrates their recklessness.  Defendants argue that they spent 7 years printing thousands of credit card receipts, without ever bothering to investigate their duties concerning credit cards and thus their violations cannot technically be "knowing." Def. Br. at 1-3; c*f. Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 125-126 (1985) ("*TWA*") (defendant not   reckless because it sought the advice of counsel).   Defendants' recklessness is further supported by the fact that they ignored the language in their own contracts, and ignored numerous notices from their own vendors. How could it not be reckless to run a business this way?

*Katz v. ABP Corp.*, No. 12-cv-04173-ENV, 2013 U.S. Dist. LEXIS 78476 (E.D.N.Y.

June 4, 2013), is similarly instructive.   In *Katz,* defendant Au Bon Pain ("ABP") moved to dismiss a FACTA complaint containing essentially the same allegations as those set forth in the Complaint here (Exhibit E to the Frank Declaration). The *Katz* court rejected the defendant's defenses and denied the motion to dismiss:

> Applying the methodology counseled in *Safeco*, Katz can state a plausible FACTA willful violation claim by first alleging ABP issued a receipt to him in connection with a consumer credit transaction—and that the receipt contained personal credit card identifiers prohibited by FACTA. Yet, such facts alone, of course, would not suffice and the pleading does not stop there. He alleges the receipt was issued from a cash register exclusively maintained, programmed, and operated by or solely at the request of ABP. It is reasonable to infer on such allegations that such is so and that ABP either intended, or recklessly permitted, such identifying information to appear on the receipt. *Safeco* teaches that either of these 'states of mind'—reckless or intentional—can support a claim of willful violation of FACTA and that a complaint alleging such facts with the reasonable inferences they permit, satisfies the plausibility requirement of Rule 8(a)(2). *Safeco* also teaches that ABP might have a defense if it acted with a not unreasonable interpretation of the same FACTA language relied upon by Katz. Clearly, such a clash of facts is inappropriate for resolution on a Rule 12(b)(6) motion to dismiss, which requires all of the plaintiff's factual allegations be deemed true and all reasonable inferences be drawn in his favor.

*Katz v. ABP Corp.*, 2013 U.S. Dist. LEXIS 78476, at *3 (emphasis added).

### a.   Definition of Willfulness

The Supreme Court's definition of objective recklessness as willfulness is not unique to *Safeco's* factual circumstances. The Court observed: "There being no indication that Congress had something different in mind, we have no reason to deviate from the common law understanding in applying the statute." *Safeco*, 551 U.S. at 69, citing (*Beck v. Prupis,* 529 U.S. 494, 500-501 (2000)). The Court went on to say that, "the common law has generally understood [recklessness] in the sphere of civil liability as conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* (quoting *Farmer v. Brennan,* 511 U.S. at 836; and Prosser and Keeton § 34, pp.

18

213-214, Restatement (Second) of Torts § 500 (1965). The Court concluded that recklessness would be defined for the purposes of 15 U.S.C. 1682n(a)(1) as a circumstance that "shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.,* at 69. The more likely the defendant's conduct is to violate the statute, the more likely there is a probability of harm, and thus the more reckless it is. In a circumstance where the statute is clear, the highe the probability that the defendant's conduct is violative argues for a greater finding of recklessness.

Plaintiff's reading of recklessness is similarly found in the Age Discrimination in Employment Act of 1967 ("ADEA"). In its Order, all of this Court's analysis of *TWA,* 469 U.S. at 125-126 (1985), concerned Section III.A. of that decision, which examines using knowledge to prove willfulness. However, Section III.B. goes on to discuss how a plaintiff may prove recklessness under the ADEA: "a violation of the Act was 'willful' if 'the employer . . . showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA."). Irrespective of what TWA may have known, the *TWA* court focused on the objective measure of TWA's actions. *Id.* The Supreme Court ultimately concluded that the plaintiff failed to allege actions demonstrating TWA's recklessness as, among other things, TWA immediately sought the advice of counsel.

Far from seeking the advice of counsel (or any other action that might disprove Defendants' total indifference to their duty concerning the expiration dates), Defendants' defense here is they should be immunized because of how effectively they stuck their head in the sand since FACTA's passing 12 years ago to avoid any real knowledge as to their duties. Unfortunately for Defendants, their supposed total ignorance as to the statutory requirements of running their business for 7 years only enforces Plaintiff's argument that they acted "objectively unreasonably," and thus recklessly. To hold otherwise would frustrate the statute's remedial

purpose. *Cortez v. Trans Union, LLC,* 617 F.3d 688, 722 (3d Cir. 2010) (the FCRA "is undeniably a remedial statute that must be read in a liberal manner in order to effectuate the congressional intent underlying it.") (citing *Sullivan v. Greenwood Credit Union*, 520 F.3d 70, 73 (1st Cir. 2008); and *Cushman v. Trans Union Corp.*, 115 F.3d 220, 223 (3rd Cir 1997)). Defendants cannot have their steak and eat it too.

### b. Defendants' Pattern and Practice of Violations Demonstrates They Were Reckless

In its Order, this Court quoted extensively from *Armalite, Inc.* v. *Lambert,* 544 F.3d at 648. The Sixth Circuit held that Armalite was willful in its violations, because multiple violations "amounted to reckless violations of known legal obligations or what comes to the same thing: a plain indifference to known legal obligations." *Id.,* at 649. As Armalite had remained negligent for at least two years and over a hundred violations, the court concluded that "At some point, repeated negligence becomes recklessness." *Id.* (citations omitted); *see also S.W. v. City of New York*, 2014 U.S. Dist. LEXIS 132973 at *45 (E.D.N.Y. Jan 28, 2014).[13]

Several courts have applied this reasoning to the FCRA context. *See Tempelman*, 2015 U.S. Dist. LEXIS 7615 at *13 (D.N.J. Jan. 22, 2015) ("[T]his case presents repeated engagement in allegedly unlawful conduct. . . . . Considered as a whole, this alleged course of conduct gives rise to a plausible inference that Defendant recklessly disregarded the requirements of [the FCRA]"); *Smith v. HireRight Solutions, Inc.,* 711 F. Supp. 2d 426, 435 (E.D. Pa. 2010) (it was reasonable to "infer that Defendant's repeated engagement in the same type of objectionable

---

[13]   Defendants were at the least on notice of the FCRA's requirements. *Lavery* v. *RadioShack Corp.,* No. 13 Civ. 5818, 2014 U.S. Dist. LEXIS 85190, 2014 WL 2819037, at *2 (N.D. Ill. June 23, 2014); *accord Dover* v. *Shoe Show, Inc.,* No. Civ. A. 12-694, 2013 WL 1748337, at *2-3 (W.D. Pa. Mar. 19, 2013), *report and recommendation adopted,* No. Civ. A. 12-694, 2013 WL 1748174 (W.D. Pa. Apr. 23, 2013); *Buechler* v. *Keyco, Inc.,* 2010 WL 1664226, at *2-3; *In re TJX Cos.,* No. 07-MD-1853-KHV, 2008 WL 2020375, at *2 (D. Kan. May 9, 2008).

conduct without justification could, at minimum, rise to the level of reckless disregard [of the FCRA].").

### c. Plaintiff's Interpretation Most Effectively Upholds FACTA's Two-tiered Liability System

Plaintiff's interpretation does not run afoul of FACTA's two-tiered liability system. First, this court has recognized that a negligence action "would come into play only where its statutory commands were unknown or incomprehensible." Order at 10. Far from unlikely, such a circumstance was specifically contemplated by Congress, as demonstrated by the statutory history.

### (i)      Congress Was Concerned With The Statute Being Incomprehensible

Far from it being unlikely that Congress contemplated that the FCRA's statutory commands would be "unknown or incomprehensible," the Clarification Act of 2007 demonstrates that Congress was concerned with this very issue.  After FACTA was first passed in 2003, there was confusion as to whether a violation required printing both more than the last five digits and the expiration date, or if printing either violated the statute. (¶37). In order to resolve this confusion, Congress unanimously passed, and the President signed, the Clarification Act in 2007. (¶38). The Clarification Act made clear that noncompliance would be actionable and full compliance with the "expiration date" component of FACTA was extended to June 3, 2008. (¶41).

### (ii)      Congress Was Concerned With FACTA Being Unknown

Further, the Clarification Act was in response to the litany of lawsuits, beginning in 2007 due to FACTA being unknown. It was for this reason the Clarification Act extended the time for compliance all the way until 2008—more than four years after the statute initially became effective. (¶27). However, while Congress's reprieve recognized it might take a few years for the

statute to be known, it was not intended to motivate defendants to stay ignorant of the law a whopping <u>twelve years</u> after the statute was first passed.

**(iii)     Congress Was Concerned With Protecting Consumers**

An interpretation that results in most violations falling under 15 U.S.C. § 1681n and not 15 U.S.C. § 1681o would support Congress's remedial intent. Should a violator print a consumer's expiration date on a receipt, and should that receipt fall into the hands of an identity thief, it is very unlikely that the information will be traceable back to Defendants.[14]  Thus, even though 7% of all US residents over 16 experienced identity theft in 2012, very few of those would be able to trace the theft back to Defendants to obtain their rightfully-owed actual damages. For this reason, the statutory damages provisions of 15 U.S.C. § 1681n are necessary to deter violators. As Defendants persuasively argue, absent this statutory liability, Defendants simply have no motive to care about printing credit card numbers, or to investigate the existence of its statutory duties. Def. Br. at 1-3.

Moreover, a defendant may be found to have acted negligently but not willfully. For example, a defendant cannot be found to have been acting recklessly where they were relying upon the advice of counsel. *See TWA*, 469 U.S. at 125-26. There, the defendant would have acted "objectively reasonably," thus leaving the negligence tier intact. However, Defendants here did not do so. Defendants here simply availed themselves of the credit card networks without a care in the world as to what the legal requirements would be.

All of Defendants' arguments as to why their conduct was not willful goes towards their subjective mental state and knowledge.[15] However, recklessness is an objective standard. *Safeco*,

---

[14]  See Department of Justice, Bureau of Justice Statistics, "Victims of Identity Theft, 2012," at p.5 (68% of identity theft victims don't know how the offender obtained their information (available at http://www.bjs.gov/content/pub/pdf/vit12.pdf )).

551 U.S. at 68 (recklessness under "the common law has generally understood it in the sphere of civil liability as conduct violating an objective standard. . . ."); *Long v. Tommy Hilfiger USA, Inc.*, 671 F. 3d 371 (3d Cir. 2012) ("Long's allegation about Hilfiger's actual knowledge or intent as to FACTA's requirements is immaterial to the objective reasonableness analysis.").

### d. Congress Refused The Partial Compliance Must Mean Negligence Defense

Defendants also contend that the requisite willfulness for FACTA liability has not been and cannot be shown because they have *partially* complied with FACTA by truncating the credit card number. Defendants insist that partial compliance must be negligence *per se*. Def. Br. at 10-12.  In short, they argue that they tried, but failed, so don't blame us.

However, both *Safeco* and the statutory history of the FCRA reject this argument. In 2007, Congress was faced with the problem of a multitude of FACTA class action lawsuits against merchants that had also truncated the credit card number, but had printed the expiration date due to confusion related to whether truncation was required for both the credit card numbers and the expiration date (¶¶38-45).[16]  In changing the law, Congress chose the higher liability, disjunctive phrasing to ensure that failing to print the expiration dates would result in an independent violation, as printing the expiration date alone leads to a high risk of harm. *Id*. It is this high risk of harm analysis that governs a determination of willfulness, both under the FCRA and common law. *See Safeco*, 551 U.S. at 69 ("[i]t is this high risk of harm, objectively assessed, that is the essence of recklessness at common law) (citing Prosser and Keeton § 34, at 213 (recklessness requires "a known or obvious risk that was so great as to make it highly probable that harm

---

[15]   Having been given two separate briefing opportunities to raise this argument, Defendants have waived their opportunity to argue that their conduct was not objectively reckless.

[16]   Courts interpreting FACTA have widely held that FACTA is "unambiguous." *See, e.g.*, *Buechler v. Keyco, Inc.*, 2010 WL 1664226, at *2-3 (FACTA is "unambiguous.").

would follow"). Simply put, Defendants' redaction of the credit card numbers does nothing to ameliorate the probability of harm from printing expiration dates, and thus cannot remediate Defendants' recklessness in printing the expiration dates.

### e. Defendants' Other Arguments For Dismissal Are Unavailing

Defendants remaining arguments either attempt to cast the facts in their favor, [17] or ask this Court to raise the bar for a motion to dismiss beyond the liberal notice pleading required by Rule 8.[18] Neither are appropriate in a Rule 12(b)(6) motion. *See* Fed. R. Civ. P. 8(a)(2) (requiring "short and plain statement of the claim showing that the pleader is entitled to relief."); *Iqbal*, 556 U.S. at 663 (a claim has "has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (quoting *Twombly*, 550 U.S. at 556); *Iqbal*, 576 U.S. 696 (for purposes of a Rule 12(b)(6) motion, plaintiff's facts must be "taken as true.") (quoting *Twombly*, 550 U.S. at 564 n.8).  Defendants' mock exasperation masks how truly unusual it is to find a merchant reckless enough to keep printing consumer's credit card expiration dates now 12 years after FACTA was first passed.

## V. CONCLUSION

For all the foregoing reasons, Plaintiff and the putative class respectfully request the Court deny Defendants' motion in its entirety. In the event that the Court dismisses the action in whole or in part, Plaintiff respectfully requests leave to amend its Complaint.

---

[17]   This includes Defendants' complaint that notices containing FACTA's truncation requirements being "buried within large documents," (Def. Br. at 2); and their absurd defense that their insurance policy's FACTA exclusion being on only "one page of a voluminous document." (Def. Br. at 3); *see Gerrish Corp. v. Universal Underwriters Ins. Co.,* 947 F.2d 1023, 1028 (2d Cir. 1991) ("An insured, absent fraud or misrepresentation, is bound by the terms of the policy and **cannot thereafter complain that he did not read or know its terms**.").

[18]   Defendants' argument that Plaintiff lacks allegations showing that Defendants' failed to rectify a known FACTA violation is simply irrelevant.

Dated: New York, New York
      March 2, 2015

                Respectfully submitted,

                **FRANK & BIANCO LLP**

                By: _/s/ Marvin L. Frank_____
                    Marvin L. Frank (MF1436)
                    Gregory A. Frank (GF0207)
                    Bridget V. Hamill (BH0207)
                    275 Madison Avenue, Suite 705
                    New York, New York 10016
                    (212) 682-1853 Telephone
                    (212) 682-1892 Facsimile
                    mfrank@frankandbianco.com
                    gfrank@frankandbianco.com
                    bhamill@frankandbianco.com

                    **NABLI & ASSOCIATES, P.C.**
                    60 East 42nd Street, Suite 1101
                    New York, New York 10165
                    (212) 808-0716 Telephone
                    (212) 808-0719 Facsimile
                    Khaled (Jim) El Nabli Jim_ElNabli@NabliLaw.com
                    Joseph H. Lilly JoeLilly@att.net
                    Alan J. Harris AlanHarrisEsq@aol.com
                    Peter Y. Lee Peter.Lee@LeeAdvocates.com

25