Eric J. Shimanoff (ejs@cll.com)
Joel K. Schmidt (jks@cll.com)
COWAN, LIEBOWITZ & LATMAN, P.C.
114 West 47th Street
New York, NY  10036
(212) 790-9200
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

CYNTHIA M. FULLWOOD, individually and on
behalf of all others similarly situated,

                         Plaintiff,

    against

WOLFGANG'S STEAKHOUSE, INC. and ZMF
RESTAURANTS LLC,

                         Defendants.

------------------------------------------------------------------ x

No. 13 Civ. 7174 (KPF) (HP)


# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(B)(1) FOR LACK OF STANDING

## Table of Contents

Page

INTRODUCTION ........................................................................................................1

ARGUMENT ..............................................................................................................3

PLAINTIFF'S SECOND AMENDED COMPLAINT SHOULD BE
DISMISSED PURSUANT TO RULE 12(B)(1) FOR LACK OF STANDING ............................3

I.      *SPOKEO* MANDATES THAT A FACTA PLAINTIFF MUST PLEAD
        MORE THAN JUST A BARE PROCEDURAL VIOLATION OF A
        STATUTE TO MAINTAIN ARTICLE III STANDING ......................................................3

II.     PLAINTIFF HAS FAILED TO ALLEGE ANY CONCRETE TANGIBLE
        OR INTANGIBLE INJURY .................................................................5

III.    PLAINTIFF SHOULD BE DENIED LEAVE TO REPLEAD .........................................12

CONCLUSION .........................................................................................12

26598/017/2103549

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................6

*Boelter v. Hearst Commc'ns, Inc.*,
  2016 U.S. Dist. LEXIS 85025 (S.D.N.Y. June 17, 2016) ......................................10

*Broderick v. 119TCbay, LLC*,
  670 F. Supp. 2d 612 (W.D. Mich. 2009) ...............................................................8

*Church v. Accretive Health, Inc.*,
  2016 U.S. App. LEXIS 12414 (11th Cir. July 6, 2016)..........................................10

*Crupar-Weinmann v. Paris Baguette Am., Inc.*,
  2016 U.S. App. LEXIS 12012 (2d Cir. June 30, 2016) ..........................................5

*Ehrheart v. Lifetime Brands, Inc.*,
  498 F. Supp. 2d 753 (E.D. Pa. 2007) .............................................................. 11-12

*Ford Motor Co. v. United States*,
  508 F. App'x 498 (6th Cir. 2012) ..................................................................... 9-10

*Gardner v. Appleton Baseball Club, Inc.*,
  2010 U.S. Dist. LEXIS 31653 (E.D. Wis. Mar. 31, 2010) ......................................8

*Hammer v. JP's Southwestern Foods, L.L.C.*,
  739 F. Supp. 2d 1155 (W.D. Mo. 2010) ...............................................................11

*Hammer v. Sam's East, Inc.*,
  754 F.3d 492 (8th Cir. 2014) ...........................................................................10, 11

*Hammond v. Bank of N.Y. Mellon Corp.*,
  2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. June 25, 2010) ......................................9

*In re Nickelodeon Consumer Privacy Litigation*,
  2016 U.S. App. LEXIS 11700 (3d Cir. June 27, 2016) ..........................................10

*Jamison v. Bank of Am., N.A.*,
  2016 U.S. Dist. LEXIS 88326 (E.D. Cal. July 6, 2016) ........................................9

*Korman v. Walking Co.*,
  503 F. Supp. 2d 755 (E.D. Pa. 2007) ...................................................................11

ii

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..................................................................................................4

*Papazian v. Burberry Limited*,
    No. 07 Civ. 1479 (C.D. Cal.) (GPS) ........................................................................9

*Ramirez v. Midwest Airlines, Inc.*,
    537 F. Supp. 2d 1161 (D. Kan. 2008)......................................................................11

*Sartin v. EKF Diagnostics, Inc.*
    2016 U.S. Dist. LEXIS 86777 (E.D. La. July 5, 2016)........................................5-6

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) .................................................................... *passim*

*Vidoni v. Acadia Corp.*,
    2012 U.S. Dist. LEXIS 59967 (D. Me. Apr. 27, 2012) ............................................8

**STATUTES AND OTHER AUTHORITIES**

Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. No. 110-241,
    §2(a)(6), (b), 122 Stat. 1565 (2008) ........................................................................7

Fair and Accurate Credit Transaction Act of 2003 ("FACTA"),  Pub. L. No. 108-
    159, 117 Stat. 1952 (2003)............................................................... *passim*

Fed. R. Civ. P. 12(b)(1)........................................................................................1, 5

The Fair Credit Reporting Act and Issues Presented By Reauthorization of the
    Expiring Preemption Provisions: Hearing Before the Committee on Banking,
    Housing and Urban Affairs, 108th Cong. 78 (2003) ................................................6

The Fair Credit Reporting Act and Issues Presented By Reauthorization of the
    Expiring Preemption Provisions: Hearing Before the Committee on Banking,
    Housing and Urban Affairs, 108th Cong. 560 (2003) ...........................................12

15 U.S.C. § 1681....................................................................................................1, 11

26598/017/2103549

Defendants Wolfgang's Steakhouse, Inc. and ZMF Restaurants LLC (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss the Second Amended Complaint ("SAC") filed by Plaintiff Cynthia M. Fullwood ("Plaintiff") based on Plaintiff's failure to allege standing under Article III.

## INTRODUCTION

Plaintiff has not suffered any tangible harm.  Yet Plaintiff seeks class-wide statutory damages (for potentially hundreds of millions of dollars) and attorneys' fees under the Fair and Accurate Credit Transaction Act of 2003 ("FACTA"), which is part of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*., based on Defendants' alleged failure to redact the expiration date of her credit card on the receipt she was given the one and only time she dined at Wolfgang's Steakhouse in Manhattan.

In *Spokeo, Inc. v. Robins*, the Supreme Court recently held with respect to Article III standing in a claim asserted under the FCRA:

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.  ***Article III standing requires a concrete injury even in the context of a statutory violation. For that reason . . . . Robins cannot satisfy the demands of Article III by alleging a bare procedural violation***.

136 S. Ct. 1540, 1549-50 (2016) (citations omitted) (emphasis added).

Plaintiff here merely has alleged a bare procedural violation of FACTA, and has failed to plead any concrete tangible or intangible harm.  Plaintiff's sole allegation concerning harm is: "On October 3, 2013, [Plaintiff] ate at Defendants' [restaurant], paid for her meal with a credit card, and received an electronically printed receipt displaying the expiration date, and was damaged thereby."  SAC ¶ 6.  Plaintiff does not allege that she suffered any

1

pecuniary loss or that she was the victim of identity theft as a result of Defendants' alleged failure to redact the expiration date from her credit card receipt, nor could she.

Nor was Plaintiff ever placed in danger of the risks that FACTA was meant to curtail, namely that her credit card receipt would be discarded, lost or stolen and then misappropriated by an identity thief.  Plaintiff makes no allegation that the allegedly non-complaint receipt was ever in the possession of anyone other than her or her counsel during the seven days between the time she received the receipt and filed her lawsuit.  Indeed, one can reasonably infer from the timing that she immediately gave the receipt to her counsel for safekeeping and that she went to Defendants' restaurant solely to obtain a non-compliant receipt. Plaintiff's receipt was never available to or at risk of misappropriation by any identity thief.

Moreover, even if there was some potential for unauthorized third party disclosure, the mere printing of Plaintiff's credit card expiration date while fully complying with FACTA's credit card number redaction provisions did not put Plaintiff at the type of imminent or non-speculative risk of identity theft that FACTA was meant to abate.

Because Plaintiff has failed to plead a concrete tangible or intangible injury in fact, she lacks standing to maintain the instant action.  The court thus should dismiss Plaintiff's SAC with prejudice.

## <u>ARGUMENT</u>

### PLAINTIFF'S SECOND AMENDED COMPLAINT SHOULD BE <u>DISMISSED PURSUANT TO RULE 12(B)(1) FOR LACK OF STANDING</u>

**I.      *SPOKEO* MANDATES THAT A FACTA PLAINTIFF MUST PLEAD MORE THAN JUST A BARE PROCEDURAL VIOLATION OF A STATUTE TO MAINTAIN ARTICLE III STANDING**

In *Spokeo*, the plaintiff filed a class-action complaint against an internet "people search engine" for willful FCRA violations arising from the defendant's gathering and public dissemination of inaccurate personal information about the plaintiff, including concerning his age, education, marital status, employment status, income level and geographic location. 136 S. Ct. at 1544, 1546. As Plaintiff here, the plaintiff in Spokeo did not allege any tangible harm and asserted claims based solely on the provisions of the FRCA that allowed for statutory damages for alleged willful or reckless violations. The district court dismissed the plaintiff's complaint for lack of standing based on his failure to allege an injury in fact. *Id*. at 1545. The Ninth Circuit reversed, finding the plaintiff had alleged a violation of his statutory right and that the plaintiff had an individualized interest in the handling of his credit information. *Id*. The Supreme Court then reversed the Ninth Circuit's opinion, finding the appellate court's analysis focused only on whether the plaintiff had pleaded a particularized, not concrete, injury. *Id*.

The Supreme Court reiterated its long-standing principle that, in order to maintain standing, a plaintiff bears the burden to plead and prove that he or she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. at 1547. The first element, an "injury in fact," is a constitutional requirement that cannot be erased by Congress through statute. *Id*. at 1547-48. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not

3

conjectural or hypothetical.'"  *Id*. at 1548 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (U.S. 1992)).  "Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'"  *Id*.  As the Court explained, "A 'concrete' injury must be 'de facto'; that is, it must actually exist.  When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term — 'real,' and not 'abstract.'  Concreteness, therefore, is quite different from particularization."  *Id*. (citations omitted).

While the Court reiterated that intangible injuries could satisfy Article III's standing requirement, it held:

> ***Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right*.  *Article III standing requires a concrete injury even in the context of a statutory violation*.**  For that reason, Robins could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.
>
> This does not mean, however, that the risk of real harm cannot satisfy the requirement of concreteness . . . . Just as the common law permitted suit in such instances, the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact.  In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified.
>
> In the context of this particular case, these general principles tell us two things: On the one hand, Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk. On the other hand, ***Robins cannot satisfy the demands of Article III by alleging a bare procedural violation*. *A violation of one of the FCRA's procedural requirements may result in no harm*.**  For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate.  In addition, not all inaccuracies cause harm or present any material risk of harm.  An example that comes readily to mind is an incorrect zip code.  It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.

4

*Id*. at 1549-50 (citations omitted) (emphasis added).

The Court then remanded the case back to the Ninth Circuit to determine "whether the particular procedural violations alleged in this case ***entail a degree of risk sufficient to meet the concreteness requirement***." *Id*. at 1550 (emphasis added).

In light of "the change *Spokeo* effected in the standing doctrine," the Second Circuit remanded *Crupar-Weinmann v. Paris Baguette Am., Inc.*, 2016 U.S. App. LEXIS 12012 (2d Cir. June 30, 2016), back to Judge Rakoff to determine whether the plaintiff in that case had adequately alleged standing under Article III. *Crupar-Weinmann* concerns pleadings nearly identical to the SAC here.

## II. PLAINTIFF HAS FAILED TO ALLEGE ANY CONCRETE TANGIBLE OR INTANGIBLE INJURY

Plaintiff's SAC does nothing more than allege a bare procedural violation of FACTA with no concrete tangible or intangible injury in fact and thus should be dismissed for lack of Article III standing pursuant to Fed. R. Civ. P. 12(b)(1).

Plaintiff has failed to allege that she suffered any tangible harm, namely that her identity was stolen or that her credit was compromised based on Defendants' providing her with an allegedly non-compliant receipt. Indeed, Plaintiff solely makes claims for statutory damages and admits she has suffered no actual pecuniary loss. Plaintiff's only allegation concerning harm is that she "ate at Defendants' [restaurant], paid for her meal with a credit card, received an electronically printed receipt displaying the expiration date, and was damaged thereby." SAC ¶ 6. Plaintiff's "bare assurance that an unspecified injury exists is insufficient to establish Article III standing." *Sartin v. EKF Diagnostics, Inc.*, 2016 U.S. Dist. LEXIS 86777, at *9-10 (E.D. La. July 5, 2016) (based on *Spokeo's* clarification of Article III standing requirement, dismissing complaint alleging bare "junk fax" violation of

Telephone Consumer Protection Act of 1991 with no specific injury).  *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (conclusory allegations insufficient).

Nor does Plaintiff's SAC sufficiently allege any intangible harm.  Congress enacted FACTA "to prevent identity theft."  Pub. L. No. 108-159, 117 Stat. 1952, 1953 (2003).  Congress's particular concern was to avert harm to consumers where a receipt was stolen, lost, or discarded, and subsequently obtained by a third party.  As Senator Schumer explained, "We should truncate credit card receipts. . . . In other words, the receipt, the part you discard, does not show the whole number on there so people cannot go into the garbage can, pick it up, and duplicate your credit card number."  *The Fair Credit Reporting Act and Issues Presented By Reauthorization of the Expiring Preemption Provisions: Hearing Before the Committee on Banking, Housing and Urban Affairs,* l08th Cong. 78 (2003), available at  https://www.gpo.gov/fdsys/pkg/CHRG-108shrg95254/html/CHRG-108shrg95254.htm.  Plaintiff does not dispute this was Congress's intent in enacting FACTA.  *See also* SAC ¶ 24 ("Identity thieves commonly obtain credit card or debit card receipts that are lost or discarded, or through theft, and use the information to engage in unauthorized credit or debit transaction").

Plaintiff's receipt was never available to or at risk of misappropriation by any malefactor.  To be at risk of identity theft, an identity thief would first need access to Plaintiff's receipt.  But Plaintiff makes no such allegation.  Plaintiff does not claim that she threw the receipt away to be retrieved by a dumpster diver, let alone an identity thief with enough skill to compute the missing credit card information.  Plaintiff does not allege the receipt was stolen, misplaced, dropped or out of her possession at any time.  Plaintiff does not allege that anyone other than plaintiff and her attorney ever has been in possession of or

even seen the receipt.  Plaintiff alleges she received the non-compliant receipt on October 3, 2013.  Plaintiff filed her initial complaint one week later.  This timing creates a strong inference that Plaintiff immediately gave her credit card receipt to her attorneys for safe-keeping and that she went to Defendants' restaurant for the sole purpose of obtaining an allegedly non-compliant receipt.  Plaintiff's credit card expiration date as printed on the receipt never was at any risk of unauthorized disclosure.

This takes Plaintiff even further away from the allegations in *Spokeo*, where information about Robins was actually disseminated via the Internet.  As the Court in *Spokeo* recognized, it is difficult to imagine how an erroneous zip code could cause harm, even if disseminated. 136 S. Ct. at 1550.  It is even more difficult to imagine how a credit card receipt showing a credit card expiration date that has never left Plaintiff's possession could cause any concrete harm or real risk of identity theft.

Moreover, Congress has found that the dissemination of a receipt with a credit card expiration date ***but with properly truncated credit card numbers***, exactly what Plaintiff alleges here, does not cause any concrete risk of harm.  In amending FACTA, Congress stated:

> Experts in the field agree that ***proper truncation of the card number, by itself as required by [FACTA], regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud*** . . . .

> The purpose of this Act is to ensure that consumers suffering from any ***actual harm to their credit or identity*** are protected while simultaneously limiting abusive lawsuits that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers.

Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. No. 110-241, § 2(a)(6), (b), 122 Stat. 1565, 1566 (2008) (emphasis added).

7

This legislative history makes two things clear.  First, in passing the Clarification Act, Congress' primary concerns were protecting victims of ***actual identity theft*** and curtailing "gotcha" lawsuits, such as the one before this Court.  Second, while Congress may have intended that the exclusion of the expiration date was required by FACTA, their primary concern was with disclosure of the expiration date ***in conjunction with*** the credit card number, facts that are not alleged here.  *Cf. Vidoni v. Acadia Corp.*, 2012 U.S. Dist. LEXIS 59967, at *15-16 (D. Me. Apr. 27, 2012) (Plaintiff's claim that defendant provided him with receipt that properly truncated the his credit card numbers but disclosed expiration date failed to allege "unjustifiably high risk of harm"); *Gardner v. Appleton Baseball Club, Inc.*, 2010 U.S. Dist. LEXIS 31653, at *17 (E.D. Wis. Mar. 31, 2010) ("given the fact that no additional protection of the consumer is achieved by deleting the expiration date, it can hardly be said that its action 'entail[ed] an unjustifiably high risk of harm…..'"); *Broderick v. 119TCbay, LLC*, 670 F. Supp. 2d 612, 619 (W.D. Mich. 2009) ("printing of the numerical equivalent of the brand name of the card . . . does nothing to increase the actual risk of identity theft").

Indeed, it would be impossible for a fraudster to utilize a credit card expiration date for some illicit purpose without also having access to some or all of the credit card numbers. Plaintiff makes no allegations that an unknown third party unlawfully had access to her credit card numbers.   Moreover, Visa and MasterCard do not require merchants to verify credit card expiration dates when processing card-absent transactions.  So long as the expiration or "Good Thru" date is beyond the date of the transaction, the transaction will be processed.  *See, e.g.,* Visa Rules (Dkt.#18-3 at p.2) ("Whenever possible, card-absent merchants should ask customers for their card expiration, or 'Good Thru,' date and include it in their authorization requests") (emphasis added).

8

Thus, the redaction of a credit card expiration date provides no real protection against credit card fraud so long as the credit card number is properly truncated, as was alleged here. Absent such an inherent risk of harm, Plaintiff cannot show a concrete injury and maintain standing. To find otherwise would require the Court to engage in multiple speculative "what ifs?" in direct contradiction to the long-standing principle that an injury in fact must be "actual or imminent" and cannot be "conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (citing *Lujan*, 504 U.S. at 560). *See also Hammond v. Bank of N.Y. Mellon Corp.*, 2010 U.S. Dist. LEXIS 71996, at *26 (S.D.N.Y. June 25, 2010) (plaintiffs who alleged mere increased fear that their personal information subject to data breach would be used improperly lacked Article III standing); *Jamison v. Bank of Am., N.A.*, 2016 U.S. Dist. LEXIS 88326, at *11 (E.D. Cal. July 6, 2016) (in light of *Spokeo*, finding hypothetical risk of harm insufficient to establish concrete injury under Truth in Lending Act).

Paragraph 47 of the SAC, which incorporates a memorandum filed by the Department of Justice ("DOJ") in *Papazian v. Burberry Limited*, No. 07 Civ. 1479 (C.D. Cal.) (GPS), does not allege concrete harm to Plaintiff. First, the DOJ submitted the memorandum in response to the defendant's argument that FACTA's requirements violated the First Amendment and merely argued that "[expiration] dates are worth protecting." The DOJ took no position on whether failure to redact the expiration date created an intangible risk of harm sufficient to confer standing. Second, the DOJ's memorandum merely is an interpretation of FACTA by an agency of the **executive** branch. It has no bearing on the issue of **congressional** intent regarding FACTA. *See Ford Motor Co. v. United States*, 508 F. App'x 498, 515 (6th Cir. 2012), *vacated on other grounds by* 134 S. Ct. 510 (2013) ("Revenue Procedure" manual issued by IRS "is just that—a statement of procedure or guidance issued by the **executive** branch. It is far from an

expression of congressional intent") (emphasis in original).  Third, the memorandum itself, which argues that "thieves *might* piece together . . . different bits of information from different sources" (emphasis added), is wholly hypothetical, especially as it relates to Plaintiff in this matter.  Such conjecture does not establish an injury in fact under Article III.

Plaintiff also may argue that FACTA was designed to protect the right of "privacy" and thus falls within the class of statutes where courts have held privacy concerns were sufficient to show concrete intangible harm.  Even if the credit card redaction provisions of FACTA did fall within the right of privacy, unlike in the cases cited by Plaintiff, *In re Nickelodeon Consumer Privacy Litigation,* 2016 U.S. App. LEXIS 11700 (3d Cir. June 27, 2016), *Boelter v. Hearst Commc'ns, Inc.,* 2016 U.S. Dist. LEXIS 85025 (S.D.N.Y. June 17, 2016), which were premised on unauthorized public disclosure, there was no public disclosure of Plaintiff's personal information here.  Only Plaintiff and her attorneys have seen the credit card receipt at issue.[1]

While some cases have found that a mere violation of FACTA is sufficient to confer Article III standing, these cases were decided prior to *Spokeo*'s clarification on standing requirements, especially under the FRCA.  For example, in *Hammer v. Sam's East, Inc.*, 754 F.3d 492 (8th Cir. 2014), the Eighth Circuit made the same incomplete analysis as did the Ninth Circuit in *Spokeo* and held that the plaintiff established standing merely by alleging a violation of a statutory right created by Congress.  The court did not examine, as *Spokeo* mandates, whether the plaintiff, who alleged statutory damages based on willful conduct and did not allege

---

[1] *Church v. Accretive Health, Inc.*, 2016 U.S. App. LEXIS 12414 (11th Cir. July 6, 2016), also is inapposite since the Fair Debt Collection Practices Act provisions requiring debt collectors to make certain disclosures in that case were designed to protect concrete risks of debt collection abuse, similar to concrete risk of harm from disclosure of *both* the credit card number and expiration date under FACTA.  Had the plaintiff in *Church* received a disclosure that inadvertently omitted a non-material clause, in accord with Justice Alito's example in *Spokeo* of disclosure of an incorrect zip code, it is unlikely the court would have found standing.

10

any pecuniary loss, had sufficiently alleged a concrete intangible harm based on the risks of identity theft as they related to the specific violation.  *See Hammer*, 754 F.3d at 497-500 ("By enacting 15 U.S.C. § 1681c(g)(1), Congress gave consumers the legal right to obtain a receipt at the point of sale showing no more than the last five digits of the consumer's credit or debit card number.  Appellants contend that Sam's Club invaded this right.  Such is the 'actual injury' alleged by the appellants").  Indeed, part of the Eighth Circuit's opinion relied on the Ninth Circuit's erroneous opinion in *Spokeo*.  *See id*. at 500.  Moreover, *Hammer* involved the disclosure of actual account numbers, not a non-personal credit card expiration date.  *See id*.

Other district court FACTA cases finding standing also have failed to conduct the analysis required by *Spokeo* and found an injury in fact existed merely because Congress created a statutory right, which is in direct contradiction to the Supreme Court's recent holding.  *See, e.g., Ramirez v. Midwest Airlines, Inc.*, 537 F. Supp. 2d 1161, 1166 (D. Kan. 2008) ("FACTA conferred upon plaintiff the legal right to receive a point-of-sale receipt from Midwest with the expiration date on her credit card omitted.  When Midwest's agent handed her a receipt that failed to omit the offending information, she suffered legally cognizable injury"); *Hammer v. JP's Southwestern Foods, L.L.C.*, 739 F. Supp. 2d 1155, 1162 (W.D. Mo. 2010) ("FACTA has created a legally protected interest in being handed a receipt that omits certain of plaintiff's credit card information.  Violation of that legally protected interest is a sufficient injury-in-fact to confer standing"); *Korman v. Walking Co.*, 503 F. Supp. 2d 755, 759 (E.D. Pa. 2007) ("Plaintiff's allegation here is that she has a legally protected interest in receiving a receipt from a merchant with certain of her credit card information omitted and that Defendant injured her when it handed her a receipt with the offending information on it.  This allegation is sufficient to confer standing"); *Ehrheart v. Lifetime Brands, Inc.*, 498 F. Supp. 2d 753, 755 (E.D. Pa. 2007)

11

("The Complaint alleges that Defendant gave Ehrheart a receipt, or receipts, which violated FACTA by printing more than the last five digits of her credit card or debit card number and/or printed the expiration date of her credit card.  That is an injury under FACTA").  Any reliance by Plaintiff on these and similar cases would be misplaced.

## III.    PLAINTIFF SHOULD BE DENIED LEAVE TO REPLEAD

Plaintiff has now filed two amended complaints, including the SAC, which was permitted to be filed after the court found Plaintiff's First Amended Complaint failed to state a claim for a willful or reckless FACTA violation.  While it is difficult to imagine any scenario under which Plaintiff can amend her pleading to comply with Article III's standing requirements, Plaintiff already has had two chances to get her pleading correct and should not be afforded any further opportunities to amend.

## CONCLUSION

FACTA's statutory damages provisions were designed not to replace the need to allege concrete harm, but to excuse consumers who suffered tangible harm from having "to prove their actual damages to a court," which can be difficult in cases of identity theft.  *See The Fair Credit Reporting Act and Issues Presented By Reauthorization of the Expiring Preemption Provisions Before the Committee on Banking, Housing and Urban Affairs*, 108th Cong. 560 (2003) (prepared statement of Travis B. Plunkett, Legislative Director for Consumer Federation of America).  *See also id.* (identity theft damages can be difficult to quantify precisely because victims "often spend hundreds of hours over a period of years trying to clear their good names").  Congress did not intend to create, and under Article III has no power to create, a cottage industry for attorneys to bring multi-million dollar claims for bare procedural FACTA violations divorced from any tangible or intangible harm.

12

As discussed above, the mere hypothetical threat of identity theft alleged here, which would require the occurrence of an improbable sequence of events, does not "***entail a degree of risk sufficient to meet the concreteness requirement***." *Spokeo*, 136 S. Ct. at 1550 (emphasis added). Having failed to establish standing under Article III, the Court should dismiss Plaintiff's Second Amended Complaint without leave to replead.

Dated: New York, New York
July 27, 2016

Respectfully submitted,
COWAN, LIEBOWITZ & LATMAN, P.C.

By:    s/ Eric J. Shimanoff
      Eric J. Shimanoff (ejs@cll.com)
      Joel K. Schmidt (jks@cll.com)
114 West 47th Street
New York, New York 10036
(212) 790-9200
*Attorneys for Defendants*

13